Submitted May 30, 2019, affirmed July 8, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KRISTI DeJONG,
*Defendant-Appellant.*

Baker County Circuit Court
16CR52264; A165504

469 P3d 253

Defendant appeals a judgment of conviction for unlawful delivery of methamphetamine. She assigns error to the trial court's denial of her motion to suppress evidence obtained from her house following the execution of a search warrant. Specifically, defendant argues that the police unlawfully seized her house before applying for a search warrant and that the state failed to show that the evidence discovered during the ensuing search was not tainted by the preceding seizure. *Held*: The trial court did not err. Defendant did not establish a factual nexus between the unlawful, pre-warrant seizure of the house and the officers' discovery of the challenged evidence. Accordingly, the burden was not on the state to prove that the evidence was not the product of that unlawful seizure.

Affirmed.

Gregory L. Baxter, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Mark Kimbrell, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Christopher Page, Assistant Attorney General, filed the brief for respondent.

Before DeHoog, Presiding Judge, and DeVore, Judge, and Aoyagi, Judge.

DeHOOG, P. J.

Affirmed.

**DeHOOG, P. J.**

Defendant appeals a judgment of conviction for unlawful delivery of methamphetamine, ORS 475.890. Defendant assigns error to the trial court's denial of her motion to suppress evidence obtained from her house following the execution of a search warrant. Defendant argues that the police unlawfully seized her house before applying for a search warrant and that the state failed to show that the evidence discovered during the ensuing search was not tainted by the preceding seizure. The state responds that suppression was not warranted, because, even if the pre-warrant seizure of defendant's home had not occurred, officers would nonetheless have discovered the challenged evidence while executing the lawfully issued search warrant. We conclude that the trial court did not err. Because the circumstances of this case do not show a factual nexus between the unlawful, pre-warrant seizure of the home and the officers' discovery of the challenged evidence, the burden was not on the state to prove that the search was not tainted by the prior seizure; we therefore affirm.

We review the trial court's denial of defendant's motion to suppress for legal error. *State v. Maciel-Figueroa*, 361 Or 163, 165, 389 P3d 1121 (2017). In conducting that review, "we are bound by the trial court's factual findings if there is *** constitutionally sufficient evidence in the record to support them." *Id.* at 165-66. "If the trial court did not make findings of fact on all pertinent issues and 'there is evidence from which the trial court could have found a fact in more than one way, we will presume that the trial court decided the facts consistently with the trial court's ultimate conclusion.'" *State v. Brownlee*, 302 Or App 594, 596, 461 P3d 1015 (2020) (quoting *Maciel-Figueroa*, 361 Or at 166). We state the facts with that standard in mind.

On August 19, 2016, an informant, Williams, who had been working with Officer Pelayo regarding defendant's suspected involvement in an "illegal drug enterprise," contacted Pelayo and informed him that she had purchased methamphetamine from defendant several times during the month of August. Williams told Pelayo that defendant "had a decent amount of methamphetamine and she was

selling it." Williams added that she had been at defendant's residence earlier that day with defendant and defendant's roommate, Penrod. During that time, Williams said, defendant had "pulled a medium sized baggie out of her black and grey colored purse containing a large amount of methamphetamine." According to Williams, defendant weighed out 40 dollars-worth of the methamphetamine and gave it to Penrod for $20. Williams told Pelayo that she had then purchased a small amount of marijuana from defendant, left the residence, and contacted him.

At Pelayo's request, Williams agreed to send defendant a text message asking to purchase methamphetamine. She sent a message to defendant stating, "Hey I got someone look in for $50th u got that." Defendant responded, "Yes." Through additional texts, they agreed to meet at defendant's house in "[a]bout an hour." Williams told Pelayo that once defendant makes an agreement to sell, she becomes impatient. Based on past deals, Williams believed that defendant would leave her residence and go camping if law enforcement waited too long.

At approximately 6:00 p.m. that evening, Pelayo and six other officers went to defendant's home and knocked on the door; defendant answered. Defendant refused to talk to Pelayo, but she did let him know that her roommate, Penrod, was the only other person there. At that point, Pelayo arrested defendant and took her to jail. Other officers then entered and "secure[d] the residence." According to Pelayo, that involved looking for people inside the house, having them come outside, and positioning officers around the house to ensure that no one entered before officers could obtain a search warrant.

While securing defendant's home, officers located Penrod in the basement and asked her to come outside. Once Penrod was outside, officers interviewed her both on site and at the police department. Penrod gave a detailed statement in which she described having purchased methamphetamine from defendant, as well as other narcotics sales by defendant. Among other things, Penrod told Pelayo that, just that day, she had seen defendant sell Williams a baggie of methamphetamine worth about $30 for only $20.

Shortly before 8:00 p.m., Pelayo began drafting an affidavit and search warrant authorizing a search of defendant's residence. In his affidavit, Pelayo discussed Williams's allegations, the text messages that Williams and defendant had exchanged, the results of Penrod's interviews, and statements attributed to defendant's neighbors and other officers. At approximately 11:00 p.m., after Pelayo had procured a search warrant, officers began a search of defendant's home, which by then had been secured for approximately five hours. During their search, officers located and seized several evidentiary items from the house, including a bindle containing what turned out to be methamphetamine, a digital scale, two baggies containing methamphetamine residue, a meth pipe, a black sunglasses bag holding syringes, a glass pipe, half of a white pill, and a cell phone.

As a result of those discoveries and Pelayo's related investigation, defendant was prosecuted for unlawful delivery of methamphetamine, ORS 475.890, conspiracy to commit a class B felony, ORS 161.450, and unlawful possession of methamphetamine, ORS 475.894. Defendant moved to suppress the evidence obtained during the warrant search, arguing that it was derived from an unlawful search and seizure; defendant also moved to controvert Pelayo's affidavit. Defendant's theory as to why suppression was required was that the pre-warrant "freezing of the premises" constituted a warrantless search and seizure not supported by exigent circumstances. Defendant further argued that, because Pelayo would not have had any information from Penrod without officers having illegally entered her home, the search warrant issued based partly on that information was not valid and the resulting evidence should be suppressed.[1]

In response, the state argued that exigent circumstances had justified securing defendant's house while officers applied for a search warrant. The state specifically

---

[1] Defendant also argued that the search warrant affidavit failed to establish probable cause because the facts Pelayo relied on were "stale" and included hearsay. The trial court excised the hearsay from the affidavit and concluded that the balance of the affidavit established probable cause. Defendant does not reprise that argument on appeal.

argued that an exigency arose following defendant's arrest, because, at that time, Penrod would have had some interest in destroying or removing any evidence in the home. The state alternatively argued that, even if exigent circumstances did not justify securing the house, suppression was not warranted, because the "police [had] gained nothing from securing the residence that they would not have otherwise had."

The trial court issued a written opinion declining to suppress the evidence discovered during the warrant search. In reaching that decision, however, the court agreed with aspects of defendant's arguments. In particular, the court agreed that "there were not exigent circumstances to justify the seizure" of the house and that the officers had therefore acted unlawfully when they secured defendant's home while Pelayo procured a search warrant. As a result, the court ruled that the suppression of Penrod's statements was required, which, in turn, meant that they could play no role in the assessment of whether probable cause had supported the issuance of a search warrant. The court disagreed, however, that the unlawful seizure of defendant's home meant that all evidence obtained pursuant to the search warrant was subject to suppression. As the trial court explained,

> "[O]nly the evidence gained from the illegal conduct should be suppressed. *State v. Smith*, [327 Or 366, 379, 963 P2d 642 (1998)].
>
> "Pelayo gained the statements of * * * Penrod as a result of the illegal seizure. Penrod's statements flowed from the illegal seizure of the residence. If the officers had not illegally seized the residence, cleared the residence, and located Penrod[,] the state would not have her statements.
>
> "The seizure of [defendant's] residence pending application for search warrant was unlawful. Penrod's statements were illegally obtained. Therefore, her statements are suppressed.
>
> "The illegally obtained statements were used in Pelayo's search warrant affidavit. Illegally obtained evidence should be excised from the affidavit and the affidavit should be

reexamined to determine if probable cause existed at the time the original warrant issued.”

Upon reexamining Pelayo's affidavit with Penrod's unlawfully obtained statements excised from that document, the trial court concluded that the search warrant was, nonetheless, supported by probable cause:

> "The court reexamined the affidavit to determine if there was probable cause given the illegally obtained statements of Penrod \*\*\*. \*\*\* This court finds that even with Penrod's statement excised \*\*\* there was probable cause to issue the warrant. Defendant's motion to suppress evidence seized pursuant to the search warrant is **denied**."

(Boldface in original.) Following the trial court's ruling on her motion to suppress, defendant entered a conditional guilty plea to Count 1, unlawful delivery of methamphetamine, and the remaining counts were dismissed. This appeal followed.

On appeal, plaintiff assigns error to the trial court's denial of her motion to suppress the evidence obtained during the warrant search of her house. Specifically, defendant argues that the evidence discovered in that search was tainted by the unlawful seizure that preceded it. Defendant acknowledges that, under *State v. Johnson*, 335 Or 511, 73 P3d 282 (2003), the burden was initially on her to establish a factual nexus between the unlawful police conduct and the discovery of the evidence she sought to have suppressed. Defendant contends, however, that she satisfied that burden in two ways: by proving that (1) but for the unlawful securing of her home, Pelayo would not have had Penrod's statements to include in his search warrant affidavit, and (2) but for the seizure, the house and its contents would not have been under police control. Thus, defendant argues, under *Johnson*, she successfully shifted the burden to the state to establish that the police did not exploit their unlawful conduct to obtain the evidence that they ultimately discovered during the warrant search. 335 Or at 521.

Defendant further contends that the state failed to meet that burden and argues that, for two reasons, any contrary argument by the state is unavailing. First, she argues, although the search warrant affidavit establishes

probable cause even without Penrod's statements,[2] the presence of those statements in the original affidavit contributed to the initial finding of probable cause. Second, defendant reasons, "[w]ithout the police seizing the house, there was no guarantee that the challenged evidence would have remained in place, such that it would have been there for the police to discover hours later upon issuance of the warrant." Defendant concludes that the trial court's suppression of only Penrod's statements was therefore insufficient.

For its part, the state does not challenge the trial court's ruling that the seizure of defendant's home was unlawful.[3] Instead, the state responds that the court did not err in ultimately denying defendant's motion to suppress, because officers would have obtained the evidence that they found during the warrant search even if the pre-warrant seizure had not occurred. Like defendant, the state recognizes *Johnson* as controlling, but argues that defendant failed to establish the requisite factual nexus between the unlawful seizure of her home and the discovery of the challenged evidence. 335 Or at 521. The state also acknowledges that the trial court found a factual nexus between the pre-warrant seizure and Penrod's statements, but argues that the court's remedy of suppressing those statements and excising them from the affidavit was both correct and sufficient. The state further observes that, because the trial court agreed with defendant that exigent circumstances did not justify the seizure, it "implicitly found that * * * Penrod was not going to remove the evidence from the residence." Thus, to the extent that defendant suggests that the unlawful removal of Penrod was causally related to continued presence of evidence in defendant's home at the time of the warrant search, the state contends that the trial court's finding precludes that argument. We turn to those arguments.

Article I, section 9, of the Oregon Constitution provides, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and

---

[2] Defendant does not contest that the search warrant affidavit, with Penrod's statement excised, establishes probable cause.

[3] Specifically, the state does not argue, as it did to the trial court, that the pre-warrant seizure of defendant's house was lawful.

effects, against unreasonable search, or seizure[.]" "A war-rantless search or seizure is unreasonable and therefore vio-lates the right provided by Article I, section 9, unless the search or seizure comes 'within one of the few specifically established and carefully delineated exceptions to the war-rant requirement.'" *State v. George*, 287 Or App 312, 315, 401 P3d 1249 (2017), *rev den*, 363 Or 744 (2018) (quoting *State v. Bridewell*, 306 Or 231, 235, 759 P2d 1054 (1988)). Whereas a search warrant carries a presumption of regu-larity, placing the burden of proving the unlawfulness of a warranted search or seizure on the defendant, the state bears the burden of proving the lawfulness of a warrantless search. *State v. Walker*, 350 Or 540, 553-54, 258 P3d 1228 (2011); *see* ORS 133.693.

As noted, the state does not cross-assign error to the trial court's ruling that exigent circumstances did not justify the pre-warrant seizure of defendant's house and that the seizure was therefore unlawful. Accordingly, the state does not challenge the suppression of Penrod's state-ments.[4] Rather, the state argues that, despite the court's conclusion that the pre-warrant seizure of defendant's house was unlawful, it correctly ruled that the discovery of drug evidence during the warranted search was lawful. Thus, the issue before us is whether the unlawful pre-warrant seizure of defendant's home somehow also rendered the results of the warrant search unlawful; that is, whether that earlier illegality "tainted" the later warrant search.

It is well established that a finding of unlawful police conduct does not invariably require the suppression of any evidence that the police discover after engaging in such conduct. *State v. Unger*, 356 Or 59, 93, 333 P3d 1009 (2014). Rather, suppression is required only if the discovery of evidence is shown to be the product of the constitutional violation, *i.e.*, when the police have exploited that illegality to obtain the evidence. *Id.* at 80; *State v. Sargent*, 323 Or 455, 462-63, 918 P2d 819 (1996); *see also State v. Smith*, 327 Or 366, 379, 963 P2d 642 (1998) (stating that "it is sufficient

---

[4] Given the state's concession, we assume for purposes of this decision that the trial court's ruling regarding the initial seizure was correct, but we express no opinion as to that issue.

to suppress only evidence that is *actually obtained* out of an illegal search or seizure" (emphasis in original)).

In *Unger*, the Supreme Court reexamined the exploitation analysis that it had articulated in *State v. Hall*, 339 Or 7, 25, 115 P3d 908 (2005), in which a defendant seeking to suppress evidence was required to show a "minimal factual nexus" between unlawful police conduct and the evidence that the defendant sought to suppress. *Unger*, 356 Or at 74. As the *Unger* court explained, *Hall* had drawn the "minimal factual nexus" requirement from *State v. Johnson*, 335 Or 511, 73 P3d 282 (2003):

> "In [*Johnson*], the defendant sought to suppress evidence that had been seized illegally but then later 'reseized' pursuant to a warrant. The state asserted that the warrant was 'entirely independent of, and was not obtained by exploitation of, the previous illegality.' Ordinarily, a search performed under authority of a warrant is subject to a presumption of regularity, and the party challenging the evidence bears the burden to prove the unlawfulness of the search or seizure. Before addressing the state's exploitation argument, the court addressed which party bore the burden with regard to proving exploitation or its absence. Because of the presumption of regularity when the police act under authority of a warrant, the court concluded that the defendant had an initial burden to establish a 'factual nexus' between prior illegal police conduct and the evidence gained pursuant to an independently valid warrant. Once a defendant demonstrates that nexus, the court in *Johnson* wrote, 'the presumption of regularity [of the warrant] is undermined and the burden of proof fairly may be shifted to the government to show that the evidence is not tainted by the misconduct.'"

*Unger*, 356 Or at 75 (brackets in original; citations omitted).

Ultimately, the *Unger* court concluded that *Hall*'s reliance on *Johnson* was misplaced, because *Johnson* had involved a warrant search, while *Hall*—like *Unger*—had involved a *warrantless* search, meaning that, by statute, the burden of proving the validity of the search was on the state. *Id.* at 75; ORS 133.693(4). Thus, reasoning that the rationale of *Johnson* was not applicable when the police did not have a warrant, the court overruled *Hall*'s requirement that, in

all instances, a defendant must establish a "minimal factual nexus" between unlawful police conduct and evidence sought to be suppressed. *Unger*, 356 Or at 75 ("When the police perform a search and seize evidence without a warrant, as in *Hall* and in this case, there is no presumption of regularity to overcome, because there was no warrant, and thus, there is no need for a threshold showing by defendant to shift the burden to the state."). *Unger* did not, however, overrule *Johnson*, nor, in our view, did it cast doubt on *Johnson*'s rationale for requiring a defendant in a search warrant case to establish a "minimal factual nexus." We proceed with that understanding.

This case, like *Johnson*, involves evidence (the house and its contents) that was initially seized unlawfully, then later "reseized" and searched pursuant to a duly issued search warrant. 335 Or at 519. Thus, as defendant acknowledges and the state agrees, defendant bore the initial burden of establishing a factual nexus between the evidence obtained during the search and the unlawful seizure that preceded it. *Id.* at 520-21. If defendant established that nexus, then the burden was on the state to show that the evidence was untainted, *i.e.*, that it was not the product of that unlawful police conduct. *Id.* Put somewhat differently, "in suppression hearings involving a search pursuant to a warrant allegedly tainted by earlier police illegality, the defendant bears the initial burden of *production*, while the state bears the ultimate burden of *persuasion*." *State v. James*, 339 Or 476, 490, 123 P3d 251 (2005) (emphasis in original).

In light of *Johnson*, the trial court correctly concluded that, although the initial seizure of the house had been unlawful, "only the evidence gained from the illegal conduct should be suppressed." The court first explained that Penrod's statements had been obtained as a result of the illegal seizure and that they, therefore, had to be suppressed. Turning to the drug evidence found in the warrant search, however, the court concluded that suppression was not required. As the state observes, in reaching that conclusion, the trial court implicitly found that the discovery of evidence during the warrant search did not result from the

pre-warrant seizure of the house. *See Brownlee*, 302 Or App at 596 ("If the trial court did not make findings of fact on all pertinent issues and there is evidence from which the trial court could have found a fact in more than one way, we will presume that the trial court decided the facts consistently with the trial court's ultimate conclusion." (Internal quotation marks omitted.)). In other words, the court implicitly found that there was no factual nexus between the evidence obtained during the search and the unlawful seizure that preceded it.

As noted, defendant makes two arguments as to how, notwithstanding the trial court's implicit finding to the contrary, a factual nexus linked the unlawful seizure of her home to the evidence that the officers found inside it. First, citing *State v. Dimmick*, 248 Or App 167, 273 P3d 212 (2012), defendant argues that the inclusion of Penrod's statements in the search warrant affidavit contributed to the issuing judge's probable cause determination, thereby establishing the required nexus. We disagree.

In *Dimmick*, the defendant was subject to a traffic stop. *Id.* at 169. Because his car was not insured, the officer conducting the stop impounded it and, as part of an inventory search, seized a backpack found in the car, even though the defendant had tried to retrieve it before leaving the scene. *Id.* at 169-70. The officer patted down the backpack and felt what he thought was probably drug paraphernalia. *Id.* at 176. The officer later applied for and obtained a warrant to search the backpack. *Id.* In his supporting affidavit, the officer described what he had felt when he patted down the backpack. *Id.* The officer's ensuing search of the backpack led to his discovery of several methamphetamine pipes and baggies containing white residue. *Id.* at 170. As a result, the defendant was charged with unlawful possession of methamphetamine. *Id.*

On appeal, we concluded that the seizure of the backpack was unlawful because it was not authorized under the applicable inventory policy; we further determined that the defendant had established a factual nexus between that unlawful seizure and the subsequent warrant search. *Id.* at 175-76. We observed that, but for the unlawful seizure,

the backpack would not have been in the possession of the police. *Id.* at 176. Furthermore, without the information that the officer had obtained unlawfully patting down the backpack, the affidavit would not have supported a search warrant. *Id.* Under those circumstances, the defendant had established the requisite factual nexus, and the burden was on the state to show that the evidence was not tainted by those prior illegalities. *Id.*

Defendant's reliance on *Dimmick* is misplaced. As the trial court correctly understood in this case, "when an application includes constitutionally tainted information, the proper remedy is for the reviewing court to excise all the tainted information from the application and determine whether the remaining information in the affidavit is sufficient to establish probable cause." *State v. Gardner*, 263 Or App 309, 313, 327 P3d 1169, *rev den*, 356 Or 400 (2014). *Dimmick* does not suggest otherwise. There, the search warrant affidavit did not establish probable cause without the illegally obtained information. *Dimmick*, 248 Or App at 176. Here, on the other hand, the trial court expressly conducted the analysis that *Gardner* and similar cases contemplate— it excised Penrod's unlawfully obtained statements and determined whether the information that remained established probable cause to search defendant's house. In the trial court's view, it did, and defendant does not challenge that conclusion.

We likewise reject defendant's second "factual nexus" argument. Defendant argues that, "[w]ithout the police seizing the house, there was no guarantee that the challenged evidence would have remained in place, such that it would have been there for the police to discover hours later upon issuance of the warrant." It is true that when the police secured defendant's house, they obtained substantial control over the house and its contents. We are unpersuaded, however, that the record contains any nonspeculative basis on which to find that the unlawful seizure of the house was causally related to the ultimate discovery of the drug evidence inside.

The Supreme Court's decision in *Smith* is instructive. In that case, the court recognized that there are

circumstances in which "the act of securing certain property may permit the police to obtain evidence that otherwise would not be available to them"; in those instances, suppression is required. *Smith*, 327 Or at 379-80. Suppression is not required, however, if the record does not establish that the unlawful securing of the property contributed to the discovery of evidence. *Id.* In *Smith*, the police had unlawfully seized, or "secured," the defendant's storage unit by placing a padlock on it in anticipation of obtaining a search warrant. *Id.* at 368-69. Once they had procured a warrant, the police searched the unit and discovered incriminating evidence. *Id.* at 369. Notwithstanding that course of events, suppression was not appropriate. *Id.* at 368. The court reasoned that "the padlock, although unlawful, was irrelevant," because the defendant had presented no evidence that anyone had attempted to gain access to the storage unit or remove the evidence before the warrant was executed. *Id.* at 380. Thus, although the padlock had unquestionably secured the unit, it had not contributed to the ultimate discovery of evidence. *Id.*

Conversely, in *Dimmick*, there was evidence that the defendant had unsuccessfully attempted to retrieve the backpack before the officer unlawfully seized it. 248 Or App at 170. Thus, had the officer acted lawfully, the backpack would not have been in the possession of the police or available to be searched pursuant to warrant. As a result, suppression was required. *Id.* at 176.

Here, as in *Smith*, nothing in the record suggests that anyone who had the ability and authority to remove items from defendant's home either attempted to do so or would have done so had the officers not secured the premises. Defendant observes that there is "no guarantee" that the evidence would have remained at the house absent the unlawful seizure. However, defendant offered no evidentiary support for her theory that evidence might have been removed had the house not been seized; without evidence to that effect, defendant's theory is mere speculation. Seeking to avoid that conclusion, defendant points to the state's argument to the trial court that an exigency had justified the pre-warrant seizure of the house because Penrod could

otherwise have removed or destroyed evidence. Whatever merit that *argument*—which, in any event, the trial court rejected—may have had, it cannot satisfy defendant's burden of producing *evidence* that Penrod or anyone else might otherwise have attempted to remove evidence from defendant's home. As a result, defendant has not established the requisite minimal factual nexus between the unlawful seizure of her house and the ensuing warrant search. Without that nexus, the state was under no obligation to establish that the police had not exploited their unlawful conduct when they searched defendant's home pursuant to warrant. Accordingly, the trial court did not err in denying defendant's motion to suppress.

Affirmed.