Argued and submitted June 22; decision of Court of Appeals reversed, judgment of circuit court reversed, and case remanded to circuit court for further proceedings November 4, 2021

STATE OF OREGON,
*Respondent on Review,*

*v.*

KRISTI DeJONG,
*Petitioner on Review.*

(CC 16CR52264) (CA A165504) (SC S068065)

497 P3d 710

Officers unlawfully seized defendant's residence. Based, in part, on information learned during the seizure, they obtained a warrant to search the residence where they discovered evidence of unlawful delivery of methamphetamine. Defendant moved to suppress the evidence obtained in the warranted search, contending that it was inadmissible under Article I, section 9, of the Oregon Constitution. The trial court denied that motion, and the Court of Appeals affirmed, relying on *State v. Johnson*, 335 Or 511, 73 P3d 282 (2003). *Held*: (1) Under the burden-shifting framework in *Johnson*, defendant established a minimal factual nexus between the unlawful seizure of her residence and the evidence that the state discovered during the warranted search so as to shift the burden to the state to prove that the evidence obtained during the warranted search was untainted by the prior unlawful seizure; and (2) the record in this case is legally insufficient to support a finding that the officers would have inevitably discovered the challenged evidence during the warranted search absent the unlawful seizure of defendant's residence.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

En Banc

On review from the Court of Appeals.*

Mark Kimbrell, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender.

Christopher R. Page, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on

_____

* On appeal from Baker County Circuit Court, Erin K. Landis, Judge (motion to suppress), and Gregory L. Baxter, Judge (judgment). 305 Or App 325, 469 P3d 253 (2020).

review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

WALTERS, C. J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**WALTERS, C. J.**

Officers unlawfully seized defendant's residence. Based, in part, on information learned during the seizure, they obtained a warrant to search the residence where they discovered evidence of unlawful delivery of methamphetamine. Defendant moved to suppress the evidence obtained in the warranted search, contending that it was inadmissible under Article I, section 9, of the Oregon Constitution.[1] The trial court denied defendant's motion to suppress that evidence, and the Court of Appeals affirmed, relying on this court's decision in *State v. Johnson*, 335 Or 511, 73 P3d 282 (2003).

In *Johnson*, this court adopted a burden-shifting framework that applies when a defendant challenges the admission of evidence obtained in a warranted search that is preceded by an illegality. Under that framework, the defendant has the initial burden to establish a minimal factual nexus between the illegality and the challenged evidence. *Id.* at 520-21. If the defendant does so, the burden shifts to the state to establish that the challenged evidence was untainted by the illegality. *Id.* In this case, the Court of Appeals concluded that defendant's challenge failed at the first step—that is, that defendant failed to establish the requisite factual nexus between the unlawful seizure of her residence and the evidence the state discovered during the warranted search. *State v. DeJong*, 305 Or App 325, 469 P3d 253 (2020). For reasons we will explain, we disagree with that conclusion and hold that defendant established the necessary factual nexus. We further conclude that the record in this case is legally insufficient to support a finding that the state met its burden at the second step of the *Johnson* analysis. Accordingly, we reverse the decision of the Court of Appeals and the judgment of the circuit court and remand the case to the circuit court for further proceedings.

---

[1] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

We review a trial court's denial of a motion to suppress for errors of law and are bound by the court's factual findings if there is constitutionally sufficient evidence to support them. *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017) (citing *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993)). If the trial court did not make express findings as to all pertinent issues and there is evidence from which the court could have found a fact in more than one way, we will presume that the court found the fact that is consistent with its ultimate conclusion. *Id.* at 166. With that standard in mind, we set out the most basic facts and later add those necessary to address the state's argument that it satisfied its burden under *Johnson*.

Officer Daniel Pelayo had been investigating defendant's involvement in an "illegal drug enterprise" for approximately 18 months when an informant, Tiffany Williams, contacted him. Williams told Pelayo that defendant was selling methamphetamine, that Williams had been at defendant's residence earlier that day to purchase marijuana, and that, while Williams was there, she had observed defendant sell methamphetamine to Flora Penrod. Pelayo knew that Penrod lived in the basement of defendant's residence, and he had Williams arrange to meet defendant at her residence to make a purchase.

Shortly thereafter, Pelayo and several other officers went to defendant's residence. Pelayo knocked on the door, and defendant answered. She told Pelayo that Penrod was in the residence but otherwise refused to speak with him. Defendant was arrested and eventually taken to the county jail.

Officers "secured" the residence. In the course of doing so, they found Penrod in the basement and interviewed her, first just outside the residence and later at the police station. During those interviews, Penrod gave a detailed account of her purchase of methamphetamine from defendant earlier that day and disclosed that defendant had given and sold methamphetamine to her in the past.

Later that evening, Pelayo prepared an affidavit and search warrant application. Among other things, the

affidavit included the information that Williams had provided about defendant's drug activities, the text messages that Williams had exchanged with defendant arranging to purchase methamphetamine, and the information that Penrod had provided during her interviews with Pelayo. The search warrant was issued and, in the subsequent search of the residence, officers located and seized evidence, including a bindle bag with methamphetamine, digital scales, a methamphetamine pipe, a glass pipe and small bottle with residue, half of a white pill, a cell phone, and a black sunglasses bag with "syringes and meth baggies" and a pipe. Among other crimes, defendant was charged with unlawful delivery of methamphetamine.

Defendant moved to suppress the evidence obtained following the seizure of her residence. Relying on Article I, section 9, she argued that, because exigent circumstances did not exist, the warrantless seizure of her residence was unlawful and that the subsequently discovered evidence should be suppressed.[2]

The trial court agreed with defendant that exigent circumstances did not justify the warrantless seizure, and that, "[i]f the officers had not illegally seized the residence, cleared the residence[,] and located Penrod[,] the state would not have her statements." But the trial court did not grant defendant's motion in its entirety. Instead, the trial court suppressed Penrod's statements and excised them from the search warrant affidavit.[3] The court then reexamined the affidavit, concluded that what remained still established probable cause to issue the warrant, and denied defendant's motion to suppress the evidence obtained in the warranted search.

Defendant entered a conditional guilty plea to unlawful delivery of methamphetamine, reserving the right on appeal to challenge, among other rulings, the trial court's

---

[2] Defendant also moved to controvert Pelayo's affidavit submitted in support of the warrant application. The trial court denied that motion, and that ruling is not at issue.

[3] The trial court also excised statements attributed to unnamed individuals that failed to establish their basis of knowledge. That ruling is not at issue.

denial of her motion to suppress.[4] After accepting defendant's plea, the trial court entered a judgment convicting defendant of unlawful delivery of methamphetamine and dismissing all other charges as indicated in the plea agreement.

On appeal, defendant assigned error to the denial of her motion to suppress, contending that the evidence discovered in the warranted search was tainted by the unlawful seizure that preceded it. *DeJong*, 305 Or App at 330. Both defendant and the state acknowledged that our decision in *Johnson* established the controlling framework for resolving the case. *Id.* at 330-31. Defendant did not challenge the trial court's conclusion that, after excising Penrod's statements and other information, the search warrant affidavit established probable cause. *Id.* at 331 n 2. And the state did not challenge the trial court's ruling that the warrantless seizure of defendant's residence was unlawful because it was not justified by exigent circumstances. *Id.* at 331 & n 3. Thus, the issue on appeal was a narrow one—*viz.*, whether, under *Johnson*, defendant had established a minimal factual nexus between the unlawful seizure of her residence and the evidence discovered in the warranted search so as to shift the burden to the state to establish that the challenged evidence was untainted by the preceding illegality. Defendant contended that she had satisfied her burden, and the state disagreed.

The Court of Appeals concluded that defendant had failed to establish the requisite factual nexus and, therefore, that the trial court had not erred in denying defendant's motion to suppress the evidence obtained in the warranted search. In reaching that conclusion, the court specifically rejected two arguments that defendant had made.

In her first argument, defendant had asserted that "the inclusion of Penrod's statements in the search warrant affidavit contributed to the issuing judge's probable cause determination, thereby establishing the required nexus."

---

[4] *See* ORS 135.335(3) (providing, in part, that, "[w]ith the consent of the court and the state, a defendant may enter a conditional plea of guilty *** reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion").

*Id.* at 335. In rejecting that argument, the Court of Appeals concluded that the trial court's remedy of excising the tainted information from the affidavit and assessing whether the balance of the affidavit established probable cause was sufficient. *Id.* at 336.

In her second argument, defendant had asserted that the challenged evidence was tainted by the preceding illegality because, as a result of the unlawful seizure, the evidence remained in place at the time of the search. *Id.* at 331. Defendant argued that the state had failed to demonstrate that the evidence would have remained in place even if the officers had not seized her residence. *Id.* at 330-31. In rejecting that argument, the Court of Appeals reasoned that defendant had the burden to establish the necessary nexus and to produce evidence that the challenged evidence "might have been removed had the house not been seized." *Id.* at 337. Without such a showing, the court concluded, defendant had not "established the requisite minimal factual nexus between the unlawful seizure of her house and the ensuing warrant search." *Id.* at 338. The court further concluded that, "[w]ithout that nexus, the state was under no obligation to establish that the police had not exploited their unlawful conduct when they searched defendant's home pursuant to [the] warrant." *Id.*

On review, defendant begins by asking us to disavow the burden-shifting framework established in *Johnson*.[5] Specifically, defendant asks us to hold, as we do with warrantless consent searches, that when the search is preceded by unlawful police conduct, the defendant need not establish a causal relationship between the unlawful conduct and the evidence obtained in the search and the burden is on the state to demonstrate that the evidence is untainted by the prior illegality. Alternatively, defendant argues that, even if *Johnson*'s burden-shifting framework applies, she met her

---

[5] As noted, in the Court of Appeals, defendant acknowledged that *Johnson* established the controlling framework. Any contrary argument in that court would have been futile, because the Court of Appeals cannot overrule this court's precedent. *See Farmers Ins. Co. v. Mowry*, 350 Or 686, 694, 261 P3d 1 (2011) (explaining that this court is "the body with the ultimate responsibility for construing our constitution, and if we err, no other reviewing body can remedy that error" (internal quotation marks omitted)).

burden—that is, she demonstrated the necessary factual nexus and shifted the burden to the state to demonstrate that the challenged evidence was untainted by the prior unlawful seizure.

The state responds that principles of *stare decisis* counsel adherence to the *Johnson* framework.[6] The state contends that, under that framework, the Court of Appeals correctly concluded that defendant did not make the necessary showing of a factual nexus between the seizure of her residence and the evidence obtained in the warranted search and, alternatively, that, if defendant made the showing necessary to shift the burden to the state, then the state produced evidence sufficient to demonstrate that the challenged evidence was not tainted by the seizure. The state argues that, even without the seizure, officers inevitably would have discovered the challenged evidence during the warranted search.

We take each argument in turn, beginning with defendant's request that we disavow the analytic framework that we adopted in *Johnson*. In doing so, "we begin with the assumption that issues considered in our prior cases are correctly decided, and the party seeking to change a precedent must assume responsibility for affirmatively persuading us that we should abandon that precedent." *Farmers Ins. Co. v. Mowry*, 350 Or 686, 698, 261 P3d 1 (2011) (internal quotation marks omitted).

Defendant gives two reasons for her request. First, she contends that we adopted the factual nexus requirement in *Johnson* without considering the purpose of Oregon's exclusionary rule, which is to vindicate a defendant's personal right to be free from unreasonable searches and seizures. *See, e.g.*, *State v. Smith*, 327 Or 366, 379, 963 P2d 642 (1998) (so stating). We reject that argument. By the time we decided *Johnson*, that purpose was clearly

---

[6] "[S]*tare decisis* is a prudential doctrine that is defined by the competing needs for stability and flexibility in Oregon law." *Farmers Ins. Co.*, 350 Or at 697-98. "[W]hether a case should be overruled cannot be reduced to the mechanical application of a formula but requires instead an exercise of judgment that takes all appropriate factors into consideration." *Horton v. OHSU*, 359 Or 168, 187, 376 P3d 998 (2016).

established.[7] Moreover, as we understand *Johnson*, its analytic framework protects, and does not burden, a defendant's right to be free from the use of evidence obtained in violation of that constitutional provision.

To explain our reasoning, it is helpful to set out our decision in *Johnson* in more detail and to home in on the application of the *Johnson* analysis to the facts of this case. Doing so demonstrates that that decision reflects an understanding of and adherence to the purpose of Oregon's exclusionary rule.

*Johnson* concerned whether evidence seized during a warranted search was tainted by the prior unlawful seizure of the same evidence. 335 Or at 513. In that case, the police became interested in the defendant as a suspect in an aggravated murder investigation. *Id.* When the defendant was arrested for an unrelated probation violation, an officer noticed that he wore a pair of boots consistent with a boot print found at the murder scene. *Id.* at 514. Detectives interviewed the defendant at the police station and, without a warrant, seized his clothing and boots and secured them in an evidence locker. *Id.* Thereafter, as the defendant was being released in the probation matter, he was arrested for the murder. *Id.*

---

[7] Before we decided *Johnson*, we had decided three cases addressing whether to suppress evidence obtained during a valid warranted search that was preceded by unlawful police conduct: *State v. Hansen*, 295 Or 78, 664 P2d 1095 (1983); *State v. Sargent*, 323 Or 455, 918 P2d 819 (1996); and *Smith*, 327 Or 366. Those cases reflected an evolution from the use of federal, deterrence-based principles in *Hansen* to the use of vindication-of-rights principles in *Smith* that further the purpose of Article I, section 9. As we explained in *Smith*,

"[t]hat we no longer adhere to the view in *Hansen* should not be surprising. *Hansen* was decided in an era when this court made little effort to evaluate Oregon's constitutional guarantees as separate from those in the United States Constitution. *Hansen* thus appears to have been an attempt to vindicate the 'police deterrence' rationale of the Fourth Amendment—that is, to prevent the police from deriving any benefit from the unlawful practice of seizing a residence in mere anticipation of obtaining a warrant to search for evidence of suspected crimes. This court since clearly has rejected that deterrence rationale as foreign to the Oregon search and seizure provision, holding, instead, that the Oregon exclusionary rule exists to vindicate a personal right to be free from unlawful searches and seizures. *See* \*\*\* *Sargent*, 323 Or at 462 n 4 [(so stating)]. To support *that* purpose, it is sufficient to suppress only evidence that is *actually obtained* out of an illegal search or seizure."

327 Or at 379 (emphases in original).

In the trial court, the defendant moved to suppress the clothing and boots under Article I, section 9. *Id.* After the trial court granted that motion, the state appealed and simultaneously applied for and obtained a search warrant authorizing the seizure of the evidence. *Id.* at 515. The Court of Appeals affirmed the trial court's suppression order, and the state did not seek review of that decision. *Id.* at 515-16. Instead, the state sought to again admit the evidence in the trial court on the theory that it had been legally seized pursuant to the warrant. *Id.* at 516. The defendant again moved to suppress, contending that "the evidence was tainted by the first, unlawful seizure and that the belated warrant did not purge that taint because it was not a genuinely independent source of the evidence." *Id.* The trial court determined that the seizure of the evidence pursuant to the warrant was not independent of the unlawful seizure because "[t]he State *** failed to prove that if the State had not seized defendant's property that the State would have been able to locate and seize defendant's property pursuant to a valid search warrant." *Id.* at 518 (internal quotation marks omitted).

On direct appeal to this court, the state contended that, "under Oregon law, defendant's clothes would not be subject to suppression if, after the initial illegal seizure, they were reseized pursuant to a lawful warrant that was entirely independent of, and was not obtained by exploitation of, the previous illegality." *Id.* at 519. In considering the state's contention, we addressed an issue of first impression in Oregon—that is, "which party carries the burden of proof" when "the evidence in question first was seized unlawfully and without a warrant and the defendant asserts that a later, warranted 'reseizure' is tainted by the unlawful, warrantless seizure." *Id.* at 520. We acknowledged that placing the burden of persuasion on the state in those circumstances "might seem contrary to the oft-cited rule that, when state agents have acted under authority of a warrant, the burden is on the party seeking suppression (*i.e.*, the defendant) to prove the unlawfulness of a search or seizure." *Id.* However, noting a similar approach taken by federal courts that was not inconsistent with the presumption of regularity that arises in a warranted search where an independent magistrate has determined that probable cause exists, we

ultimately established the burden-shifting framework that defendant challenges in this case:

> "[E]ven assuming that the issuance of the warrant was proper, if the defendant is able to show that the evidence obtained therefrom is connected to some prior governmental misconduct, the presumption of regularity is undermined and the burden of proof fairly may be shifted to the government to show that the evidence is not tainted by the misconduct."

*Id.* at 521.

Applying that construct in *Johnson*, we held that the defendant had satisfied his burden of showing a factual nexus between the challenged evidence and the prior unlawful conduct:

> "In so holding, we rely on the fact that the police used information derived from that earlier unlawful seizure, *viz.*, the fact that the clothes could be found in a police evidence locker, when they later applied for a search warrant. The existence of that factual connection is sufficient to shift the burden of persuasion regarding taint to the state."

*Id.* Turning to whether the state had satisfied its burden of showing that the challenged evidence was not tainted, the issue reduced to whether the state had established that it was more likely than not that it "would have obtained the [evidence] in any event." *Id.* at 522. We concluded that evidence in the record supported the trial court's ruling that the state had not carried its burden, and we affirmed the court's suppression order. *Id.* at 526.

Thus, in *Johnson*, the defendant met the factual nexus requirement by showing that "the police used information derived from that earlier unlawful seizure *** when they later applied for a search warrant." 335 Or at 521. In this case, defendant submits that she met her burden by doing the same—that is, by showing that the officers used information that they obtained during the seizure of her residence when they applied for a warrant to search it. In defendant's view, that showing is sufficient to shift the burden to the state to demonstrate that the officers would have obtained the challenged evidence even if they had not unlawfully seized the residence. The state disagrees; it

contends that defendant was required to establish that "but for the unlawful seizure of the residence the officers would not have obtained the drug evidence."[8]

Defendant is correct in her understanding of the "minimal factual nexus" required by *Johnson*. As noted, this court required that the defendant show only that the evidence obtained "is *connected to* some prior governmental misconduct." *Id.* at 521 (emphasis added). We explained that it was "reasonable" to require that a defendant establish that connection to rebut the presumption of regularity attendant to warranted searches, *id.*, but we did not place a burden on the defendant to show, as the state contends the defendant must, that "but for the unlawful [act] the [government] would not have obtained the [challenged] evidence." *Johnson* places the obverse burden—the burden to show that "the evidence is not tainted by the misconduct," *id.*—on the state, and, if we were to accept the state's argument, we would be shifting that burden to the defendant. So understood, *Johnson* is consistent with the purpose of Article I, section 9, to protect a defendant's right to be free from the use of evidence obtained in violation of that constitutional provision. *See Smith*, 327 Or at 379 (discussing the nature of a defendant's Article I, section 9, rights).

Defendant's second argument is that the "minimal factual nexus" analysis in *Johnson* cannot be reconciled with our reasoning in *State v. Unger*, 356 Or 59, 333 P3d 1009 (2014), a case in which we considered the effect of a preceding illegality on a warrantless search conducted pursuant to the defendant's voluntary consent, and, in that context, disavowed the burden-shifting framework.

In *Unger*, the defendant sought to suppress evidence obtained in a warrantless search to which he voluntarily

---

[8] In support of its argument, the state cites *U.S. v. DeLuca*, 269 F3d 1128 (10th Cir 2001), a federal case cited in *Johnson*. In *DeLuca*, the court said that the demonstration of a factual nexus requires, at a minimum, that a defendant "adduce evidence at the suppression hearing showing the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct." 269 F3d at 1132 (internal quotation marks omitted). We do not understand *Johnson* as having adopted the heightened factual nexus test described by the state; in fact, that test would subvert the framework established in *Johnson*.

consented, contending that the search had been tainted by preceding unlawful police conduct. In an earlier case, *State v. Hall*, 339 Or 7, 115 P3d 908 (2005), we had "described a two-step analysis to determine whether evidence obtained pursuant to voluntary consent must nonetheless be suppressed." *Unger*, 356 Or at 64. Under *Hall*, a defendant was required to establish a "minimal factual nexus" between the prior unlawful police conduct and the evidence that the defendant sought to suppress. *Unger*, 356 Or at 64. If the defendant made that showing, then the state was required to show that the search was not tainted by the preceding conduct. *Id.* In *Unger*, the state urged us to overrule *Hall* by eliminating the exploitation analysis and to hold, instead, that evidence obtained during a voluntary consent search is admissible despite prior unlawful police conduct. *Id.* at 65. Although we rejected the state's argument, we agreed that *Hall*'s exploitation analysis was "flawed in some respects" and required "refinement." *Id.* at 70. As relevant here, we disavowed the first step in the *Hall* analysis—that the defendant establish a "minimal factual nexus" between the illegality and the challenged evidence—because that step in the analysis was "drawn from a case that arose in a significantly different procedural context," failed to consider a relevant statute, had been unevenly applied, and had proved to be confusing. *Id.* at 74.

The case that we referenced in *Unger* as the case from which the *Hall* analysis was drawn was *Johnson.* In *Unger*, we distinguished *Johnson* and held that our reliance on it in *Hall* had been misplaced because warranted and warrantless searches are governed by different principles: By statute, when a defendant challenges a warrantless search (*e.g.*, *Hall* and *Unger*), the state bears the burden of proving the validity of the search.[9] *Unger*, 356 Or at 75. In contrast, when a search is conducted pursuant to a warrant (*e.g.*, *Johnson*), the presumption of regularity—arising from an independent magistrate's determination that probable cause supports the issuance of the warrant—applies and the defendant must establish the requisite factual nexus

---

[9] *See* ORS 133.693(4) ("Where the motion to suppress challenges evidence seized as the result of a warrantless search, the burden of proving by a preponderance of the evidence the validity of the search is on the prosecution.").

before the burden shifts to the state to prove the validity of the search. *Id.* at 75 (describing *Johnson*). As we explained in *Unger*, when police search without a warrant, "there is no presumption of regularity to overcome" and, therefore, "no need for a threshold showing by the defendant to shift the burden to the state." *Id.* In addition, we explained that, in that context, the "minimal factual nexus" test is not analytically significant. We said that the

> "exploitation analysis already considers the existence of a 'minimal factual nexus,' because determining whether the police exploited their unlawful conduct to gain the disputed evidence necessarily requires an examination of the causal connection between the police conduct and the defendant's consent. Accordingly, the 'minimal factual nexus' test is not analytically significant in determining whether the consent to search was the product of the illegal police conduct, such that evidence obtained pursuant to that search must be suppressed."

*Id.* at 76.

Defendant acknowledges that the statute that applies to warrantless searches and that places the burden on the state to prove the validity of such a search does not apply to warranted searches. Nevertheless, she contends, the same analysis should apply where a warranted search is preceded by an illegality—here, the warrantless seizure of defendant's residence. Defendant argues that, when police officers engage in unlawful conduct, evidence obtained in a subsequent warranted search should be suppressed, unless the state establishes that the evidence obtained was not tainted by the prior unlawful conduct.

Defendant also acknowledges that the issuance of a warrant gives rise to a presumption of regularity. However, she contends that the presumption of regularity "does not and cannot speak to whether the warrant or the warrant search is tainted by prior police misconduct."

Finally, defendant acknowledges that, in *Unger*, we disavowed *Hall*, and not *Johnson*. Nevertheless, defendant argues, the reasons that persuaded the court to eliminate the "minimal factual nexus" test in *Unger* are equally applicable in the present context. In defendant's view, determining

whether police officers exploited their unlawful conduct to gain disputed evidence necessarily requires an examination of the causal connection between the police conduct and the evidence obtained.

Defendant's arguments have some merit. Defendant is correct that, when police officers engage in illegal conduct, it is the effect of that illegality on the subsequent discovery of evidence that is at issue. In some instances, the illegal conduct may be followed by an act that provides lawful authority to search (*e.g.*, obtaining voluntary consent to search or obtaining a valid warrant to search). When a defendant seeks to suppress evidence discovered in a legally authorized search on the basis of a prior illegality, the focus of the inquiry is not on the legality of the act providing authority to search, it is on the effect that the prior illegality may have had on the authorized search. That is true whether or not a statute addresses the requisite burden, and it is also true even if we presume that the issuance of a warrant gives rise to a presumption of regularity. Defendant's final argument, though, cuts in favor of our retention of the *Johnson* framework. In *Unger* we recognized, in the context of a warrantless search, that the showing that is necessary at the first step of the burden-shifting analysis is so minimal that it may be analytically insignificant and ultimately subsumed in the exploitation analysis. Even if the same may be true in the present context, the minimal nature of the requirement weighs against its disavowal here.

In *Johnson*, we held that a defendant who seeks to exclude evidence that was obtained in a warranted search must establish a minimal factual connection between the illegality asserted as a basis for suppression and the challenged evidence. 335 Or at 521. Given our understanding of the nature of that connection and the fact that we had the opportunity, in *Unger*, to disavow *Johnson* as well as *Hall*, and did not do so, we decline defendant's invitation to act now. Instead, we turn briefly to the question of whether defendant in this case successfully established the minimal factual nexus required by *Johnson*.

For reasons already stated, resolution of that issue requires little discussion. Defendant's burden of establishing

a factual nexus is *minimal* and intended merely to rebut the presumption of regularity attendant to warranted searches. Contrary to the state's assertions, satisfying that minimal standard does not require a defendant to identify and produce evidence related to discrete factual theories connecting the unlawful conduct with the challenged evidence. Here, defendant established that, as a result of the unlawful seizure of her residence, Pelayo obtained Penrod's statements and used them to obtain the warrant. As in *Johnson*, that is sufficient to establish defendant's burden and to shift the burden to the state to prove that the evidence obtained during the warranted search was untainted by the prior unlawful seizure of defendant's residence. *See Johnson*, 335 Or at 521 (stating that, in holding that the defendant established the burden of showing a factual nexus, "we rely on the fact that the police used information derived from that earlier unlawful seizure *** when they later applied for a search warrant" and that "[t]he existence of that factual connection is sufficient to shift the burden of persuasion regarding taint to the state").

The Court of Appeals reached a contrary result, holding that defendant failed to establish the requisite factual nexus because (1) the balance of the warrant affidavit established probable cause to search defendant's residence even after the trial court suppressed and excised Penrod's statements, among others; and (2) defendant failed to produce evidence to support her theory that, if the police had not unlawfully seized the residence, there was no assurance that the challenged evidence would have been there during the warranted search. *DeJong*, 305 Or App at 336-37.

We disagree with that analysis. Whether the warrant was ultimately determined to be valid and supported by probable cause to search is immaterial to whether defendant satisfied her burden to connect the preceding illegality with the issuance of the warrant and thereby with the discovery of the challenged evidence. And, by requiring defendant to produce evidence proving that the challenged evidence would not have been found during the warranted search, the court essentially required defendant to disprove that the state inevitably would have discovered the

challenged evidence, thus misallocating the state's burden to defendant.

The final question for our consideration is whether, as the state contends, it established that the evidence discovered during the warranted search was untainted by the preceding unlawful seizure of defendant's residence. The state argues that, absent the unlawful seizure, officers inevitably would have discovered the challenged evidence. *See State v. Miller*, 300 Or 203, 225, 709 P2d 225 (1985), *cert den*, 475 US 1141 (1986) (explaining that "[t]he inevitable discovery doctrine permits the prosecution to purge the taint of illegally obtained evidence by proving, by a preponderance of the evidence, that such evidence inevitably would have been discovered, absent the illegality, by proper and predictable police investigatory procedures"); *see also id.* at 227 (explaining that, "[i]n the case of a warrantless entry into premises," the court should consider "the possibility, that, if police had not made the illegal entry into the premises, evidence might have been disposed of or hidden").

As both parties acknowledge, the crux of their dispute on this issue is whether the challenged evidence would have been discovered during the warranted search if the officers had not unlawfully seized defendant's residence. The trial court did not make express or implied factual findings on that question.[10] Thus, the proper resolution of this case depends on whether there is sufficient evidence from which

---

[10] As noted, the trial court denied defendant's motion to suppress the evidence seized pursuant to the warranted search after suppressing and excising Penrod's statements from the warrant affidavit and concluding that the warrant was nonetheless supported by probable cause. Given that analysis and disposition, we do not understand the trial court to have determined whether, despite the ultimate validity of the warrant, the state would have inevitably discovered the challenged evidence absent the unlawful seizure of defendant's residence. Accordingly, we do not agree with the state that, in ruling that exigent circumstances did not justify the warrantless seizure of defendant's residence, the trial court implicitly found that "Penrod would not have disposed of or otherwise prevented the officers from finding the drug evidence." We also do not agree with defendant that, when the trial court stated that "[l]aw enforcement created further exigency by going to the defendant's door and confronting [her]," it implicitly found that "the drug evidence was at risk of being moved or destroyed following defendant's arrest." *See Pereida-Alba v. Coursey*, 356 Or 654, 671, 342 P3d 70 (2015) (reasoning that a reviewing court will not presume that a trial court made implicit factual findings when such findings are not necessary to the trial court's ultimate conclusion or the record does not support them).

the trial court, as a reasonable factfinder, could have found that no one would have removed or destroyed the drug evidence even absent the seizure. *See Johnson*, 335 Or 521-26 (examining whether, absent the unlawful conduct, evidence would have been available later for seizure pursuant to a valid warrant); *Smith*, 327 Or at 379-80 (same).

If there is legally sufficient evidence in the record to support such a finding, the proper disposition would be to remand to the trial court to engage in the necessary fact finding in the first instance. *See State v. Ryan*, 361 Or 602, 624-25, 396 P3d 867 (2017) (remanding to the trial court to make factual findings in the first instance where there was an indication that the court misapprehended the import of the defendant's argument and, as a consequence, failed to make related factual findings); *State v. Blair*, 361 Or 527, 542, 396 P3d 908 (2017) (remanding case to the trial court to make factual findings in the first instance under the correct legal standard). Thus, we turn to the evidentiary record.

As noted above, Pelayo had been investigating defendant's involvement in an "illegal drug enterprise" for approximately 18 months. On the day the residence was secured, there had been high-volume, short-stay bicycle and vehicle traffic there. Pelayo and several other officers went to defendant's residence with the intention to contact her and, if she did not want to cooperate, to remove any occupants and secure the residence while obtaining a warrant. Following defendant's arrest, the residence was secured with caution tape placed around its perimeter and officers posted around it to ensure that no one entered. According to Pelayo, following an arrest such as this, "it's pretty common" for the arrestee's friends to "come and clean them out."

No one entered the residence during the approximately five hours that it was secured, and the officers did not permit anyone to do so. Penrod was in an RV on the property caring for her dogs; however, Pelayo testified that she was not and would not have been allowed in the residence. Another man, who Pelayo suspected of involvement "in the drug trade," stopped in a vehicle that had been previously seen at the residence to inquire about the circumstances, despite the officers' presence and the caution tape

surrounding the residence. He left after Pelayo asked him about whether he possessed drugs. Finally, a second man "came and wanted a bicycle that he said was his." Pelayo "ran the guy," and another officer arrested him on an outstanding warrant. Pelayo testified that that man would not have been allowed in the house, because Pelayo did not know whether the bicycle belonged to him and he was not going to let the man "take [defendant's] stuff, potentially."

Against that evidentiary backdrop, the state contends that, as in *Smith* and *State v. Sargent*, 323 Or 455, 918 P2d 819 (1996), "the evidence showed that no one would have removed or destroyed the drug evidence if there were no seizure."[11] Specifically, the state argues that, even though Pelayo expressed concern that someone would enter defendant's residence and steal her property after her arrest, the state's obligation was to demonstrate that those "concerns were unfounded because the four individuals who could have accessed the house would not have removed the drug evidence." To that end, the state argued:

> "Defendant could not access the drug evidence. The first unidentified man did not say or do anything suggesting that he wanted to access the house. The second unidentified man sought to access an outbuilding on the property to retrieve a bicycle, not the drug evidence or something within its vicinity in the house, before he was arrested. And finally, the evidence of *** Penrod's cooperation with *** Pelayo during questioning and the absence of any indication that she would have removed or destroyed the drug evidence showed that she would not have made unavailable the drug evidence."

---

[11] In both *Smith* and *Sargent* we concluded that evidence obtained during a warranted search that was preceded by unlawful police conduct was not subject to suppression. In *Smith*, after a drug-sniffing dog alerted at the defendant's storage unit, the manager of the storage facility put a padlock on the unit at the request of the officers. 327 Or at 369. In concluding that suppression was not required, we reasoned that "[n]o one attempted to gain access to the unit to remove the evidence before the search warrant was executed"; thus, "the padlock, although unlawful, was irrelevant" because "[t]he evidence would have been obtained even in the absence of the unlawful police conduct." *Id.* at 380. Similarly, in *Sargent*, we assumed that an unlawful seizure of the defendant's apartment had occurred but concluded that suppression of the evidence found during the subsequent warranted search was not required where no one attempted to enter the apartment between the time that the defendant had left and the time that the warranted search began. 323 Or at 459, 462-63.

The fundamental problem with the state's position is that this case is not like *Smith*, in which no one had approached the defendant's storage unit before the warranted search, or *Sargent*, in which no one had attempted to enter the apartment before the warranted search began. Instead, during the unlawful seizure of defendant's residence, "the second unidentified man" sought to access the residence. At least as to him, the record is devoid of any evidence that he would not have removed or destroyed the challenged evidence, and the state, which has the burden of proof on that issue, bears the consequence of that omission. Although the state contends that this individual did not seek access to the house but only access to an "outbuilding," it relies for that argument on statements included in Pelayo's affidavit and those statements were suppressed.

Accordingly, we conclude that the record in this case is legally insufficient to support a finding that the officers *would* have inevitably discovered the challenged evidence during the warranted search absent the unlawful seizure of defendant's residence. *See Miller*, 300 Or at 226 ("It is not enough to show that the evidence 'might' or 'could have been' otherwise obtained."). Thus, remanding this case to the trial court for that purpose is unnecessary. *Cf. Pereida-Alba v. Coursey*, 356 Or 654, 673, 342 P3d 70 (2015) (reasoning that, where there is evidence in the record that would permit a trial court to make a factual finding, a remand for that purpose is appropriate).

Nonetheless, we conclude, for an independent reason, that the appropriate disposition of this case is to remand it to the trial court for further proceedings. As noted, defendant entered a conditional guilty plea, reserving her right to challenge the trial court's denial of her motion to suppress. ORS 135.335(3) provides that a defendant who enters such a plea and prevails on appeal "may withdraw the plea." Because we agree with defendant that the trial court erred in denying her motion to suppress the evidence seized during the warranted search, she has prevailed on appeal and may withdraw her plea. We remand to the trial court to allow her the opportunity to do so. *See State v. Tannehill*, 341 Or 205, 212, 141 P3d 584 (2006) (concluding that ORS

135.335(3) "permits the defendant to withdraw the entire plea and rescind the agreement if one of the premises on which the parties entered into the plea agreement is no longer valid").

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.