Submitted February 21, 2013, affirmed May 29, petition for review denied
October 23, 2014 (356 Or 400)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

FRANK NATE GARDNER,
*Defendant-Appellant.*

Linn County Circuit Court
08081653; A146833

327 P3d 1169

Peter Gartlan, Chief Defender, and Louis R. Miles, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Douglas F. Zier, Senior Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and De Muniz, Senior Judge.

DE MUNIZ, S. J.

**DE MUNIZ, S. J.**

Defendant appeals a judgment of conviction for unlawful delivery of methamphetamine (ORS 475.890) and unlawful possession of methamphetamine (ORS 475.894). The police entered defendant's residence three times. The police first entered defendant's residence as part of a so-called "protective sweep" during the execution of a warrant authorizing the search of other structures on defendant's property. The second entry occurred when police officers accompanied defendant into his residence so that defendant could retrieve some paperwork regarding ownership of a piece of equipment. The third entry was pursuant to a warrant authorizing the search of defendant's residence. The affidavit in support of that search warrant contained assertions and information based on the first two warrantless entries of defendant's residence. Drug and drug-related evidence admitted at defendant's trial was seized during the second warrantless entry and the third warranted entry. Defendant moved to suppress the evidence seized during both entries, contending that the entries were unlawful in violation of Article I, section 9, of the Oregon Constitution. The trial court denied defendant's motion. On appeal, defendant renews his argument that the evidence seized during both entries should have been suppressed. We affirm.

Following the hearing on defendant's motion to suppress evidence, the trial court made findings of fact. Accordingly, we state the facts consistently with the trial court's findings of fact. *See State v. Stevens*, 311 Or 119, 135, 806 P2d 92 (1991) (appellate court bound by trial court findings of fact supported by evidence in the record). On August 5, 2008, around 9:30 p.m. five police officers from various local agencies conducted a lawful search of two mobile homes on defendant's property. The target of the warrant was Darell Thompson, a man who lived in one of the mobile homes and who was in custody during the search. Officers believed Thompson and associates were manufacturing and delivering methamphetamine. Defendant's residence and a large shop building were also on defendant's one-acre property.

The officers proceeded with the search carefully because the property had a history of being used as a methamphetamine production site. It was dark outside and the

officers suspected that the people on the property were armed. There was a long line of recreational vehicles parked along the south and southeast boundaries of the property that had not been searched, and there were only five officers for what the officers considered a relatively large operation.

The officers encountered four individuals on the property. One was outside and three were in a shop. The officers entered the shop to secure it and the individuals inside. Two of the individuals possessed drugs. After encountering and seizing the individuals, the officers decided that for their own safety they needed to undertake a "sweep" of defendant's residence. Officers Parker and Davis entered defendant's residence through an open glass door and announced their presence. The officers moved room-to-room looking for persons and possible weapons, opening closed doors, checking closets and bathrooms, and looking under beds. Three knives were found on a bar in a small dining area near the sliding glass door. One knife was double-edged. They also observed packaging with white residue on a dresser in one of the rooms.

Parker and Davis entered defendant's room and observed a large round table with clean packaging and packaging that contained white residue. There was also a long gun case, along with surplus military ammunition, and an empty holster in the bathroom closet. The officers did not seize any of the items they observed. No other persons or weapons were found. After leaving the residence, the officers searched the attached garage and found small propane bottles, which they believed indicated methamphetamine was smoked in that location. The entire "sweep" lasted between three to five minutes. One of the individuals in custody, Hiler, gave the officers consent to search his person and his room which was located inside defendant's residence. In Hiler's room the officers found and seized a small bag of methamphetamine and a pipe.

Defendant arrived at the property around 2:00 a.m. Defendant told the officers that he had been renting a room to Hiler for three to five months and that Hiler had access to all areas of the property and defendant's residence, with the exception of defendant's room. Defendant asserted that

the used methamphetamine bags observed in the residence were there for women who used the drug.

The officers questioned defendant about a skid steer (a small piece of farm equipment) that they had observed in the shop. Defendant responded that he had documents relating to the ownership of the skid steer. He also told them that he had firearms in the residence. The officers followed defendant to his room to retrieve the documentation. At that time, the officers seized the packaging with white residue that they had previously observed in their "sweep" of defendant's residence. Defendant denied that the packaging was related to drug use or distribution and denied ownership of the packaging with white residue. Defendant told the officers that the material belonged to a woman who "liked that kind of stuff." At that point, defendant asked the officers to stop searching.

Subsequently, the police obtained a search warrant authorizing the search of defendant's residence. During that search of defendant's residence the police seized packaging material with residue, a "snort tube," two knives wrapped in tape, two spoons with white residue and foil handles, a digital scale, and a pistol. Laboratory analysis confirmed that the white substance was methamphetamine. Letters discussing trading drugs or money for prostitution were also found in defendant's bedroom along with documents that appeared to be drug records.

In his affidavit requesting a warrant to search defendant's residence (the second warrant issued for this property), Detective Davis described the "protective sweep" and the evidence that he had observed in defendant's room, including the ammunition, the holster, the gun casing, the propane torches used for smoking methamphetamine, the baggies in the common area with trace amounts of methamphetamine on them, a small amount of suspected methamphetamine, and marijuana, as well as a small amount of paraphernalia (pipes with residue).

As described above, defendant contends that the two warrantless entries and the third warranted entry into his residence were in violation of Article I, section 9, and

that the evidence seized during the second and third entries should have been suppressed. We need not consider whether the warrantless entries into defendant's residence were unlawful for two reasons. First, defendant does not argue that the drug and drug-related evidence seized during the warranted entry is not sufficient to support defendant's delivery and possession convictions. Second, even if the first two warrantless entries violated defendant's rights under Article I, section 9, because they resulted in constitutionally tainted information being included in a warrant application, that does not compel the conclusion that a search conducted pursuant to that warrant was invalid. *State v. Hitesman/ Page*, 113 Or App 356, 359, 833 P2d 306, *rev den*, 314 Or 574 (1992). Instead, when an application includes constitutionally tainted information, the proper remedy is for the reviewing court to excise all the tainted information from the application and determine whether the remaining information in the affidavit is sufficient to establish probable cause. *Id.* at 359.

Accordingly, we excise from the warrant application all of the information derived from the two warrantless entries, and determine, based on the remaining information contained in the warrant, whether a neutral and detached magistrate could conclude that there is reason to believe that the facts stated are true, and that the facts and circumstances disclosed in the application are sufficient to establish probable cause to justify the requested search. *State v. Castilleja*, 345 Or 255, 264-65, 192 P3d 1283, *adh'd to on recons*, 345 Or 473, 198 P3d 937 (2008).

Excising from the affidavit all of the information derived from the two warrantless entries, the remainder of the affidavit describes the following. The police executed the first search warrant for Thompson's mobile homes that were parked on defendant's property. The affidavit contains detailed verbatim passages from the first search warrant affidavit detailing facts showing that Thompson had been selling methamphetamine from the mobile homes, including information from a named informant and evidence of a controlled buy of drugs from Thompson. The affidavit includes details from the execution of the first search warrant on

defendant's property, including the officers' encounter with the four individuals on the property—Hiler, Brewer, and Wood. The affidavit sets out Hiler's criminal history, the discovery of a methamphetamine pipe in his pocket, his admission to using methamphetamine, his admission to possession of methamphetamine in his bedroom located inside defendant's house, and his consent to allow the police to enter his bedroom to seize drugs. The affidavit also describes Wood's possession of marijuana, his consent to a search of his trailer, the discovery of methamphetamine and drug paraphernalia in his trailer, as well as Wood's comment that he had a key to defendant's residence and that he had slept on the floor inside defendant's house for the past few years. The affidavit states that defendant and Hiler both admitted that drugs and evidence of drug possession were in defendant's residence. The affidavit sought a warrant to search for, among other crimes, the crime of frequenting a place where controlled substances are used and sold.

Probable cause exists when the facts set out in the warrant application would lead a reasonable person to believe that seizeable things will probably be found in the location to be searched. *State v. Henderson*, 341 Or 219, 225, 142 P3d 58 (2006). Here, we have no difficulty concluding that the affidavit, even without any information derived from the two warrantless entries into defendant's residence, would lead a reasonable person to believe that evidence of frequenting a place where controlled substances are used or sold would probably be found inside defendant's residence.

Affirmed.