Submitted on remand from the Oregon Supreme Court April 21, reversed and remanded September 8, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEFFREY CHRISTIAN YAEGER,
*Defendant-Appellant.*

Deschutes County Circuit Court
16CR17252; A164641

517 P3d 1029

On remand from the Supreme Court for reconsideration in light of *State v. DeJong*, 368 Or 640, 497 P3d 710 (2021), the Court of Appeals reconsidered, under the analysis required by *DeJong*, whether evidence obtained in a warranted search of a "secure data" (SD) card belonging to defendant should have been suppressed because of an underlying illegality that preceded the issuance of the warrant. *Held*: The court held that defendant had established the minimal required nexus between the underlying illegality and the warrant to search the SD card, but that there was legally sufficient evidence from which the trial court could find that, even in the absence of the underlying illegality, the state would have sought and obtained a warrant to search the SD card and discovered the challenged evidence. The court determined, therefore, as required by *DeJong*, that on remand the trial court would have an opportunity to make findings addressing whether the state would have sought and obtained the warrant to search the SD card in the absence of the underlying illegality.

Reversed and remanded.

On remand from the Oregon Supreme Court, *State v. Yaeger*, 369 Or 338, 504 P3d 1178 (2022).

A. Michael Adler, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kali Montague, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Rolf C. Moan, Assistant Attorney General, filed the briefs for respondent.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

TOOKEY, P. J.

Reversed and remanded.

**TOOKEY, P. J.**

This case is on remand from the Oregon Supreme Court for reconsideration in light of the court's recent opinion in *State v. DeJong*, 368 Or 640, 497 P3d 710 (2021). In our first opinion, *State v. Yaeger*, 311 Or App 626, 651, 492 P3d 668, *adh'd to as modified on recons*, 314 Or App 97, 493 P3d 579 (2021), *vac'd*, 369 Or 338, 504 P3d 1178 (2022), we agreed with defendant that much of the evidence against her on charges of second-degree encouraging child sex abuse, ORS 163.686, and unlawful contact with a child, ORS 163.479, must be suppressed, because the evidence was obtained from unwarranted searches of defendant's home and while defendant was under non-*Mirandized* interrogation in compelling circumstances, and that warrants were obtained based on that tainted evidence. We excepted from that conclusion evidence derived from a warranted search of a "secure data" (SD) card from defendant's cell phone. We held that, even excising the unlawfully obtained evidence from the warrant's affidavit, the allegations of the affidavit provided probable cause for a search of the SD card. We reversed and remanded defendant's convictions.

Then, the Supreme Court allowed review pursuant to defendant's petition and vacated our opinion and remanded for reconsideration in light of the court's opinion in *State v. DeJong*, 368 Or 640, 497 P3d 710 (2021). *State v. Yaeger*, 369 Or 338, 504 P3d 1178 (2022). In *DeJong*, the court highlighted and adhered to its opinion in *State v. Johnson*, 335 Or 511, 73 P3d 282 (2003), in which the court adopted a burden-shifting framework that applies when a defendant challenges the admission of evidence obtained in a warranted search that is preceded by an illegality. Under that framework, because of the warrant's presumptive validity, a defendant has the initial burden to establish a minimal factual nexus between the illegality and the challenged evidence. *Id*. at 520-21. If the defendant does so, the burden shifts to the state to establish that the challenged evidence was untainted by the illegality. *Id*. The court emphasized in *DeJong* that the defendant's burden to show a minimal factual nexus between the illegality and the challenged evidence is minimal and intended merely to rebut the presumption of regularity attendant to warranted searches. *Id*. at

654-55. The court rejected the state's "but for," analysis, requiring a defendant to show that, "but for the unlawful seizure of the residence the officers would not have obtained the drug evidence." 368 Or at 651. The court emphasized in *DeJong* that *Johnson* required that the defendant show only that the evidence obtained "is connected to some prior governmental misconduct." *Id.* (citing *Johnson* at 335 Or at 521). The state then must show that the evidence would have been discovered without the prior illegality. *Id.* The court, in essence, rejected the trial court's and this court's rationale upholding the search in that case based on the warrant being supported by probable cause even without the evidence tainted by the prior illegality. *Id.* at 646. The court held that, "When a defendant seeks to suppress evidence discovered in a legally authorized search on the basis of a prior illegality, the focus of the inquiry is not on the legality of the act providing authority to search, it is on the effect that the prior illegality may have had on the authorized search." *Id.* at 654.

In light of *DeJong,* we reanalyze the trial court's ruling denying defendant's motion to suppress evidence from the SD card. For context, we summarize briefly the underlying facts that bear on that issue, drawn primarily from our original opinion. Defendant appealed convictions, on a conditional guilty plea, of three counts of second-degree encouraging child sex abuse, ORS 163.686, and two counts of unlawful contact with a child, ORS 163.479, contending that the trial court erred by denying her motion to suppress statements obtained through an interrogation in violation of *Miranda*, and physical evidence that defendant contended was obtained by searching her residence and cell phones without her voluntary consent. Defendant also contended that the warranted discovery of her cell phones was a product of her unlawfully obtained statements. At the time, defendant had been released to post-prison supervision (PPS) on a conviction of second-degree online sexual corruption of a child, ORS 163.432, and the Board of Parole and Post-Prison Supervision had designated her a predatory sex offender.

Defendant's release was subject to certain conditions, including that she could not have a cell phone. *Yaeger,* 311 Or

App at 628. Carpenter, defendant's PPS officer, learned from McNaughton, another PPS officer, that one of McNaughton's supervisees, Dunaway, had reported that defendant had cell phones on which she kept pornography that appeared to be of underaged females. Dunaway had also reported to McNaughton that defendant had an SD card containing pornography and had lost the card.

On July 29, Carpenter and McNaughton together went to defendant's motel residence to conduct a "home visit." The PPS officers learned that defendant was at the dentist. They also learned from a motel employee that a resident of the motel had found an SD card that contained pornography and pictures of defendant. The motel resident had turned the card over to a motel employee, who turned the SD card over to Steele, the motel manager. *Id*.

The PPS officers then went to defendant's dentist's office, where they met defendant on her way out. They escorted defendant back to the motel. In defendant's apartment, defendant admitted that she had cell phones, and she led the PPS officers to the place where she had hidden them. The PPS officers searched the cell phones with defendant's permission and found pornographic images of underaged females. The PPS officers then brought defendant to the PPS office, where they questioned her further. Defendant stated that she had lost the SD card to one of her phones. The PPS officers asked where the SD card had been lost and its description. *Id.* Later that day, Steele brought the SD card that had been found at the motel to Carpenter, who provided it to Officer Murphy, a detective with the Bend Police Department.

Defendant was ultimately arrested. About three weeks after defendant's arrest, Murphy questioned her in the jail, and provided Miranda warnings before doing so. Murphy showed defendant the SD card that Carpenter had given him and asked if it was hers. Defendant said that she was not sure if it was her SD card but that it resembled her own. *Id.* at 632. She did not consent to a search of the SD card.

On August 31, Murphy applied for a warrant to search the SD card as well as the personal papers and

notebooks that had been discovered in defendant's motel room on July 29. In his affidavit for the search warrant application, Murphy recited much of what had occurred on July 29, as told to him by Carpenter. The search warrant application was granted. Murphy thereafter analyzed the SD card, in which he found "images and videos of suspected child porn" and "images [of] young girls of various ages, from prepubescent to teenagers." Murphy subsequently requested, obtained, and executed three additional warrants.

In her motion to suppress, defendant challenged the admissibility of her statements and challenged the search warrants as well as the search of her room, her cell phones, and the SD card. *Id*. at 634-65. The trial court denied defendant's motion, and, on a conditional guilty plea, defendant was convicted of three counts of second-degree encouraging child sex abuse, ORS 163.686, and two counts of unlawful contact with a child, ORS 163.479.

As noted, in our original opinion, we agreed with defendant that statements she made to PPS officers on July 29, 2015, while she was in compelling circumstances during a non-*Mirandized* interrogation, were obtained in violation of Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution. We further agreed with defendant that evidence obtained through an unwarranted search of her hotel room and through execution of a subsequent warrant for the search of her cell phones and the papers found in her hotel room, based on the August 31 affidavit should be suppressed as tainted by the unlawfully obtained evidence. We thus agreed with defendant that most of the evidence obtained before and through the execution of three of four search warrants should be suppressed.

We agreed with the trial court, however, that the warranted search of the SD card from one of defendant's cell phones was valid. We cited our statement in *State v. Gardner*, 263 Or App 309, 313, 327 P3d 1169, *rev den*, 356 Or 400 (2014), that, "when an application includes constitutionally tainted information, the proper remedy is for the reviewing court to excise all the tainted information from the application and determine whether the remaining information in the affidavit is sufficient to establish probable cause."

*Yaeger*, 311 Or App at 648. We described the extensive facts recited in the August 31, 2015, affidavit that were not connected to the unlawfully obtained evidence and concluded that, independent of and after excising unlawful allegations from the affidavit, the affidavit provided probable cause for the search of the SD card. *Id.* at 650. The search of the SD card, we held, was valid, and the trial court therefore did not err in denying defendant's motion to suppress evidence derived from it.

In *DeJong*, the Supreme Court implicitly overruled our analysis in *Gardner*. *See DeJong*, 368 Or at 656 n 10 (stating that the trial court had not determined whether, "despite the ultimate validity of the warrant, the state would have inevitably discovered the challenged evidence absent the unlawful seizure of defendant's residence"). That is, it appears that when a defendant has met the burden to show the minimal required nexus between the unlawfully obtained evidence and the warrant, *DeJong*, 368 Or at 650, in remedying the effects on a warrant based on unlawfully obtained evidence, it is not sufficient for the state merely to show that the warrant application was sufficient without the tainted evidence. The state must show that *the challenged evidence would have been discovered* during the warranted search even without the prior illegality. *Id*. at 656 (the issue is "whether the challenged evidence would have been discovered during the warranted search" in the absence of the illegal conduct).

The court further explained in *DeJong* that, in the face of an illegality preceding the issuance of a warrant, "the proper resolution of this case depends on whether there is sufficient evidence from which the trial court, as a reasonable factfinder, could have found that" the challenged evidence would have been discovered despite the illegality. *Id*. at 656-57. Thus, the trial court, in the first instance, must determine whether the challenged evidence would have been discovered in the absence of the illegality. *Id*.

Here, the state concedes that defendant has met her initial burden to show a factual nexus between the challenged evidence and the illegality, and we agree. The August 31 search warrant affidavit recounted information

that was unlawfully obtained on July 29. Thus, it is the state's burden to prove that the evidence obtained during the warranted search of the SD card was untainted by the prior unlawful conduct, an issue that the trial court did not address because it had concluded that there had been no unlawful conduct. The question properly before us on appeal is whether there is sufficient evidence from which the trial court could have found that, in the absence of the unlawful conduct, the challenged evidence on the SD card would nonetheless have been discovered. *DeJong*, 368 Or at 655. If the evidence is sufficient, we must remand the case to the trial court for it to engage in fact finding on that issue. *Id*. at 657 ("If there is legally sufficient evidence in the record to support such a finding, the proper disposition would be to remand to the trial court to engage in the necessary fact finding in the first instance.").

We conclude that there is legally sufficient evidence from which the trial court could find that, even in the absence of the illegal conduct, the evidence from the SD card would have been lawfully discovered through "inevitable discovery," which "permits the prosecution to purge the taint of illegally obtained evidence by proving * * * that such evidence inevitably would have been discovered, absent the illegality, by proper and predictable police investigatory procedures." *Id.*, 368 Or at 656 (internal quotation marks omitted). In considering that question, "[O]ur task is to determine whether the state raised sufficient evidence from which the trial court could, together with nonspeculative derivative inferences, find the predicate facts necessary to support the state's inevitable-discovery argument." *State v. Hensley*, 281 Or App 523, 535-36, 383 P3d 333 (2016) (internal quotation marks omitted).

Here, at the time of the August 31 affidavit, and as alleged in it, the state had lawfully obtained the SD card from a third party. The SD card had been found by a third party on the grounds of the motel where defendant lived. The state had information from the third party that the card contained pornography and an image of defendant and that defendant had lost an SD card. The state was aware that defendant was prohibited by PPS conditions from possessing an SD card, accessing the internet, or viewing sexually

stimulating materials. The state was aware that defendant
had been classified as a "predatory sex offender," had a sex-
ual interest in young girls, and was prohibited from view-
ing pornography. The state was aware that defendant had
previously hidden a cell phone containing child pornogra-
phy on the motel grounds in an effort to avoid detection by
PPS officers. The affidavit's affiant, Murphy, stated that he
knew, based on his training and experience, that "preda-
tory sex offenders often collect, trade, and view child and
adult pornography," that cell phones and "Secure Data (SD)
cards within cell phones" can store photos. The record leads
us to conclude that there is legally sufficient evidence from
which the trial court could find that, even in the absence of
the prior illegalities, the state, through proper and predict-
able police investigatory procedures, would have sought and
obtained a warrant to search the SD card and discovered
the challenged evidence. On remand, the trial court will
have an opportunity to make findings addressing that issue.

Reversed and remanded.