No. 872　　　　　October 8, 2025　　　　　75

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CARLOS ALBERTO MACIEL-SALCEDO,
*Defendant-Appellant.*

Marion County Circuit Court
20CR36863; A181886

Tracy A. Prall, Judge.

Argued and submitted July 9, 2025.

Daniel C. Silberman, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Philip Thoennes, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for attempted delivery of methamphetamine (Count 1).[1] In a single assignment of error, defendant argues that the trial court erred in denying his motion to suppress evidence found during a warranted search of defendant's hotel room that was preceded by a prior unlawful "protective sweep" of the room. We conclude that the state met its burden to show that the warranted search was not tainted by the prior illegality and thus the trial court did not err in denying defendant's motion to suppress. Accordingly, we affirm.

## I.   BACKGROUND

This case comes before us for a second time on appeal. In the first appeal, the state challenged the trial court's granting of defendant's initial motion to suppress evidence obtained during the warranted search of the hotel room. We reversed and remanded, and on remand defendant filed a supplemental motion to suppress, which the trial court denied. That motion and ruling are the subject of this appeal. In denying defendant's supplemental motion to suppress, the trial court relied on the evidence presented on defendant's initial motion to suppress and the findings that it made based on that evidence. Thus, we begin with a detailed discussion of the facts and procedural history related to that initial motion to suppress.

## II.   FACTS AND PROCEDURAL HISTORY

We review a trial court's denial of a motion to suppress for legal error and are bound by the court's factual findings if there is constitutionally sufficient evidence to support them. *State v. DeJong*, 368 Or 640, 643, 497 P3d 710 (2021). If the trial court did not make express findings as to all pertinent issues and there is evidence in the record from which the court could have found a fact in more than one way, we will presume that the court found the fact that is consistent with its ultimate conclusion. *Id.*

With that standard in mind, we recount the evidence presented at the hearing on defendant's initial motion

---

[1] Defendant was also found guilty of possession of methamphetamine (Count 2). The trial court merged that verdict with the verdict on Count 1.

to suppress. That evidence includes facts from the affidavit in support of the warrant to search the hotel room and the testimony of two detectives.

Salem Police Detective Burke learned from a confidential informant (CI) that a person named Rosie was involved in selling methamphetamine. On July 6, 2020, Burke arranged a controlled buy with the CI to purchase methamphetamine from Rosie at her apartment. After the CI went to Rosie's apartment, the location of the deal changed to a La Quinta Inn and Suites. Rosie told the CI that there were "three cartel members" inside room 333.

Burke followed the CI to the hotel while Detective Bidiman stood in the hallway of the hotel on the third floor. Shortly after Rosie arrived in the parking lot of the hotel, she made a phone call, at which time Bidiman heard a phone ring and then saw two men—later identified as defendant and defendant's brother—walk out of room 333 while one of the men answered the ringing phone. Defendant and his brother got into an elevator and Bidiman went down the stairs to the lobby. Bidiman saw defendant and his brother in the parking lot, then Bidiman went back up to the third floor to "look for anybody else coming or going from the room."

Officers observed defendant and his brother meet with Rosie in the parking lot. Defendant's brother held his hat out to Rosie, and she placed something inside of it. Defendant then went back into the hotel.[2] Rosie told the CI to meet her at a location near the hotel, where she sold the CI a quarter pound of methamphetamine. Burke left briefly to meet with the CI, and Bidiman and another officer stayed at the hotel to continue surveillance.

Bidiman spoke to hotel staff and learned that room 333 had been rented under defendant's name, that defendant had registered two guests, and that defendant had a brown Dodge truck. An officer saw defendant's brother leave the hotel in a white car. Burke "made a plan to take [defendant's brother] into custody when [defendant's brother] came back [to the hotel]" and "requested members of the Salem

---

[2] It is unclear whether defendant's brother also went back into the hotel. Burke testified that he did, but Bidiman testified that it was "[his] understanding" that he did not.

Police Street Crimes Unit to set up" at the hotel for that purpose. Defendant and a third man came out of the hotel and got into a brown Dodge truck in the parking lot. Officers blocked the truck from leaving and arrested both men.

Burke and two other officers obtained a key for room 333 from the hotel staff and entered the room to "secure the premises for search warrant preparation," because they were concerned about officer safety and possible destruction of evidence. Based on Burke's experience, "a lot of times in a hotel room there will be a lookout person who will watch for people to be taken into custody in the parking lot, who will stay in the room to either fortify the room or to start destroying evidence." When they did the protective sweep, they knew that the three people associated with the room had left, and Burke "had no specific information that anybody had entered [room 333] and remained there such that they could present a danger to [officer] safety or the destruction of evidence ***."

In the room, officers observed drug paraphernalia and what appeared to be "methamphetamine packaged in bulk." Burke prepared an affidavit and warrant to search the hotel room. Burke had decided to seek a warrant to search the room shortly after the controlled buy and before the protective sweep.

A magistrate signed the affidavit at 11:21 p.m. and signed the warrant to search the hotel room at 11:27 p.m. Officers executed the warrant sometime before midnight and seized evidence of drug dealing.[3] The state charged defendant with delivery of methamphetamine and possession of methamphetamine.

A.   *Defendant's Initial Motion to Suppress*

Defendant filed a motion to suppress the evidence obtained during the warranted search of the hotel room, arguing, among other things, that the warrantless protective sweep of the hotel room was unlawful and that, without

---

[3] At the hearing on defendant's supplemental motion to suppress, defense counsel said there was "no doubt that a warrant was procured in relatively quick fashion. I think it was just mere hours from the time of the arrest until that happened." The record does not reflect, however, what time on July 6 that the officers arrested defendant or conducted the protective sweep, so it is unclear how many hours passed between those events and the execution of the warrant.

the information obtained from the unlawful sweep, police would not have been able to establish probable cause to support a warrant to search the hotel room. The state argued that the warrantless search was justified by exigent circumstances because police believed that there might be a "lookout" in the room who might destroy evidence and present a risk to officer safety. *See State v. Bridewell*, 306 Or 231, 236, 759 P2d 1054 (1988) ("Securing a warrant before entry is unnecessary if exigent circumstances, in addition to probable cause, exist \* \* \*."); *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991) ("An exigent circumstance is a situation that requires police to act swiftly to prevent danger to life or serious damage to property, or to forestall a suspect's escape or the destruction of evidence.").

The trial court found that there was "an officer observing the room. He saw two people exit, never saw anybody else enter, never saw anybody else exit." The trial court found that the evidence established that there were three people involved and the "officers on the scene knew that all three were out of the room." The court thus concluded that the protective sweep was unlawful because it was "not more likely than not that there was somebody else in the room." The court excised from the affidavit the observations that the officers made during the sweep and concluded that even without the excised portions, the affidavit established probable cause. The court thus denied defendant's motion to suppress.

Defendant filed a motion to reconsider that ruling, and the trial court reversed its earlier ruling and granted the motion to suppress after concluding that the affidavit failed to establish probable cause. As noted above, the state appealed, and we concluded that, absent the information obtained during the unlawful entry, the affidavit nonetheless established probable cause. We thus reversed and remanded. *State v. Maciel-Salcedo*, 321 Or App 202, 204, (nonprecedential memorandum opinion), *rev den*, 370 Or 471 (2022).

B.  *Defendant's Supplemental Motion to Suppress*

On remand, defendant filed a supplemental motion to suppress evidence—the motion that is at issue in this appeal—in which he argued that the state could not meet its

burden to show that the warranted search was not tainted by the prior unlawful protective sweep. *See DeJong*, 368 Or at 642 (when a defendant challenges the admission of evidence obtained in a warranted search that is preceded by an illegality and the defendant establishes a minimal factual nexus between the illegality and the challenged evidence, the burden shifts to the state to establish that the challenged evidence was untainted by the illegality); *State v. Yaeger*, 321 Or App 543, 548, 517 P3d 1029 (2022), *rev den*, 371 Or 477 (2023) (under *DeJong*, "it is not sufficient for the state merely to show that the warrant application was sufficient without the tainted evidence").

The state did not contest that defendant had established a minimal factual nexus between the challenged evidence and the prior illegality but argued that the evidence would have been inevitably discovered absent the prior illegality. *See State v. Craigen*, 370 Or 696, 712, 524 P3d 85 (2023) (the state can purge the taint of a prior illegality by showing "that the evidence would have been inevitably discovered"). Under the inevitable discovery doctrine, "the state must show, by a preponderance of the evidence: (1) that certain proper and predictable investigatory procedures would have been utilized in the instant case, and (2) that those procedures inevitably would have resulted in the discovery of the evidence in question." *State v Johnson*, 340 Or 319, 326-27, 131 P3d 173 (2006) (internal quotation marks omitted).

The state contended that it satisfied the first prong of the inevitable discovery doctrine—whether proper and predictable investigatory procedures would have been utilized—because Burke had decided to write a warrant before the protective sweep and believed that there was probable cause to do so. The state further contended that it met its burden on the second prong—whether the evidence would have been discovered, *i.e.*, whether the evidence would have still been in the hotel room when the warrant was executed—because the room was secured by a keycard and the "three people associated with the room and who had access were either in custody or had left the area and never returned."

Defendant argued that the state could not prove that the evidence would have remained in the room when

the warrant was executed because defendant's brother was unaccounted for and "after the transaction in the parking lot, the detectives ended their surveillance of the exterior of [room 333], so police could not know whether anyone attempted to enter" the room. The state responded that defendant's assertion that police ended their surveillance of the hotel room was not supported by the record.

At a hearing on defendant's supplemental motion to suppress, the state relied on the evidence that was presented at the prior suppression hearing and did not present any additional evidence. The state argued that because "the Court has already made the requisite findings *** that it was not more likely than not that [the] evidence would have vanished," it met its burden to show that the evidence would have been inevitably discovered. Defendant countered that, although the state "could [have called] witnesses to *** flesh out that evidentiary direction and maybe carry their burden," the state could not meet its burden on the existing record, where the evidence showed that two people—Rosie and defendant's brother—were unaccounted for before the warrant was executed.

The trial court noted that it "did make a finding of no exigency *** at [defendant's] behest," and defendant responded that whether an exigency exists at the time of the unlawful entry and whether the evidence would still be there when the warrant was executed are "[t]wo separate questions." The trial court responded that

"While I understand what [defendant's] argument is, *** I made a finding that there's no exigency at that point where they entered, I think the argument about exigency is that there was no exigency because during the time which it would take them to get a warrant, not at the moment that they entered, it is they had no basis to enter because it would only take so long to get a warrant, and during that time, there would be no exigency. So I'm believing that *** my finding *** included the time that you're discussing, the point after the entry until the warrant was actually obtained.

"So I believe I previously made that finding."

The trial court indicated that it would review the transcript and the findings that it made at the prior

suppression hearing and then make its ruling on the sup-
plemental motion to suppress. In a letter opinion, the trial
court stated that in the prior hearing, it "not only deter-
mined there was no exigency at the time of entry but also
necessarily determined that there would be no exigency in
the time it would take to obtain a search warrant. Therefore,
the court has already determined there was no risk of the
evidence being tampered with or destroyed in the time it
would take to obtain a search warrant." The trial court thus
denied defendant's supplemental motion to suppress.

## III.   ANALYSIS

Defendant assigns error to that ruling, renewing
his argument that under the burden-shifting framework out-
lined in *DeJong*, he established the minimal factual nexus
between the unlawful protective sweep and the challenged
evidence and thus the burden shifted to the state to show
that the challenged evidence was untainted by the prior ille-
gality. Defendant contends that the state cannot meet that
burden because the evidence presented at the initial suppres-
sion hearing was legally insufficient to establish inevitable
discovery. Defendant further argues that the trial court's con-
clusion that its initial exigency determination was dispositive
with respect to inevitable discovery was legally erroneous.

We begin by clarifying the issues that are not in dis-
pute. The state concedes that defendant met his burden to
show a minimal factual nexus between the prior illegality
and the challenged evidence, and we accept that concession.
Further, defendant concedes that the state satisfied the first
prong of the inevitable discovery doctrine—that police in this
case followed "certain proper and predictable investigatory
procedures." *State v. Miller*, 300 Or 203, 225, 709 P2d 225
(1985), *cert den*, 475 US 1141 (1986). We accept that concession.

Thus, the question on appeal is whether the state
carried its burden to show, by a preponderance of the evi-
dence, that police would have inevitably discovered the evi-
dence. In other words, we must determine whether the state
met its burden to show that the evidence would not have
been destroyed or removed in the time it took for police to
obtain and execute the warrant.

Under our standard of review, where we are bound by the trial court's factual findings "and all inferences consistent with those findings" if there is sufficient evidence in the record to support them, we conclude that the evidence supported the trial court's finding that "there was no risk of the evidence being tampered with or destroyed in the time it would take to obtain a search warrant." *See State v. Lovaina-Burmudez*, 257 Or App 1, 3, 303 P3d 988, *rev den*, 354 Or 148 (2013) (setting forth standard of review).

That evidence included Rosie's statement that there were "three cartel members" in the room; information that the room was rented to defendant and he had registered two additional guests; that shortly after the controlled buy, defendant's brother left the hotel and defendant and a third man were taken into custody; and Burke's testimony that he made a plan to take defendant's brother into custody when defendant's brother came back to the hotel and officers had "set up" at the hotel for that purpose.

That evidence supported an inference that there were only three people who had access to the room, that officers remained at the scene until the warrant was executed, and that defendant's brother—the only person known to police who was not in custody and who had access to the room—would have been taken into custody had he returned to the hotel. Thus, the trial court correctly concluded that the state, by a preponderance of the evidence, proved that the drug evidence would have remained in the hotel room and police would have inevitably discovered it. *See State v. Smith*, 327 Or 366, 380, 963 P2d 642 (1998) (concluding that evidence would have been obtained even in the absence of unlawful police conduct where police unlawfully padlocked the defendant's storage unit and later conducted a warranted search of the unit; the trial court found that no one had attempted to gain access to the unit before the warrant was executed and that finding was supported by evidence in the record); *State v. Sargent*, 323 Or 455, 459, 462-63, 918 P2d 819 (1996) (where police unlawfully seized the defendant's apartment, suppression of evidence found during subsequent warranted search was not required where no one attempted to enter the apartment between the time that the

defendant had left and the time that the warrant was executed); *cf. DeJong*, 368 Or at 659 (rejecting the state's argument that no one would have removed or destroyed drug evidence absent unlawful seizure of the defendant's residence where an unidentified man sought access to the residence and "the record is devoid of any evidence that he would not have removed or destroyed the challenged evidence").

Further, we disagree with defendant's argument that the trial court "was legally incorrect to conclude that its initial exigency determination in the 2020 suppression hearing was dispositive regarding inevitable discovery." Defendant argues that the trial court's initial exigency determination focused on the risk of evidentiary destruction at the time of the unlawful protective sweep, whereas inevitable discovery requires the state to prove that the evidence would have remained in the room hours later when the warrant was executed. Thus, in defendant's view, "the trial court was wrong to conclude that it had already decided the inevitable discovery issue at the first suppression hearing via its original exigency conclusion."

In our view, the trial court correctly understood that a finding with respect to inevitable discovery must include, as relevant to this case, the time between the unlawful protective sweep and the execution of the warrant. The trial court explained that it understood the argument that defendant was making and that it "made a finding that there's no exigency" at the time of the unlawful entry and that its finding "included *** the point after the entry until the warrant was actually obtained." Further, the trial court subsequently reviewed the evidence and findings from the initial suppression hearing before making its ruling on whether the state met its burden to prove inevitable discovery.

In sum, the trial court's finding that there was no risk of the evidence being destroyed in the time it would take to obtain a warrant is supported by evidence in the record, and thus the state met its burden to show that the challenged evidence was untainted by the prior unlawful protective sweep. Thus, the trial court did not err in denying defendant's supplemental motion to suppress.

Affirmed.